UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**LARRY WAYNE CANTRELL,**

      **Plaintiff,**

**v.**                                                                         **Case No. 2:18-cv-01106**

**JOHN FRAME, RICHARD TONEY,**
**ANDREW HILL, RYAN HILL,**
**SGT. MIKE BUZZARD, and SCOTT SMITH,**
**sued in their individual capacities,**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

      This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the defendants' Motion to Dismiss (ECF No. 11).

**FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

      The plaintiff's Complaint contends that, on March 26, 2018, he was subject to cruel and unusual punishment in violation of the Eighth Amendment and denied due process of law in violation of the Fourteenth Amendment when the defendants, as part of a Special Response Team ("SRT"), entered his pod at the Mount Olive Correctional Complex ("MOCC"), removed him and several other inmates for a surprise cell search, and placed them, in full restraints, in one-man recreation yard cages for over two hours.

Specifically, the plaintiff alleges that the SRT team shut off the water in his cell around 7:00 a.m. and it remained off until 6:00 p.m. After searching a number of other cells in his pod, two unknown officers conducted a strip search of the plaintiff, placed him in handcuffs and shackles with his hands behind his back, removed him from his cell, and led him to a pod table, where he was "chained to it without incident." (ECF No. 2 at 1-2, ¶¶ 1-10). While the plaintiff was chained to the table, an incident occurred in which another inmate in the pod was sprayed with a chemical agent by correctional officers. According to the plaintiff, at that point, defendant Richard Toney then yelled, "That's it, I've had enough! Get them all out of here!" (*Id.* at 3, ¶ 13).

Defendants Scott Smith and Mike Buzzard then unchained the plaintiff and took him to the recreation yard and placed him in a one-man cage, which, according to the defendants, is the same set up the inmates use on a daily basis for recreation and making phone calls. (*Id.* at 7, ¶¶ 14-15 and Appx. B-F; ECF No. 11 at 3). The plaintiff claims that he leaned against the cage to have his restraints removed (as they are generally removed during recreation time) and told defendant Buzzard that the restraints were really tight and were not double-locked. Nonetheless, Buzzard refused to remove or adjust them and instead instructed the plaintiff to "talk to the Cpt." (ECF No. 2 at 7, ¶¶ 16-18). Other inmates made similar complaints about their restraints. (*Id.* at 8, ¶ 19).

The plaintiff later asked defendant Toney to remove his handcuffs because they were hurting his wrists and shoulders, but Toney also refused and said, "not my call, ask Frame." (*Id.*, ¶ 21). The plaintiff further contends that he was "left outside" in shorts and a t-shirt in approximately 40-degree weather. (*Id.* at 8-9, ¶¶ 24-25).[1]

---

[1] According to the defendants, the recreation yard is not actually outside. However, the room has four large windows in the back which are open to the outside with screens to allow air to circulate through the room. (ECF No. 12 at 3).

According to the Complaint, all of the correctional officers left the recreation area, leaving seven inmates locked in the cages and still in restraints. (*Id.*, ¶ 23). After approximately 20 minutes, several of the officers, who are not specifically identified, came back to the recreation yard and taunted the inmates, making comments such as "How's the weather in here? Air's a little cold, huh?" and "Why's nobody laughing now? Are you not having fun anymore?" (*Id.* at 9, ¶¶ 27, 30). The plaintiff again informed the officers that his handcuffs were too tight, that he couldn't feel his hand, and that his shoulders were hurting too. (*Id.*, ¶ 28). Other inmates complained about their restraints and the temperature as well. (*Id.*, ¶ 31). Again, the correctional officers failed to intervene and left the recreation area. (*Id.* at 10, ¶¶ 32, 33).

The Complaint further alleges that, after another hour in the recreation cage, he and other inmates yelled for help because he had to go to the bathroom, but no one came to assist him. (*Id.*, ¶¶ 34-36). The plaintiff urinated on himself after his calls to the SRT team members went unanswered. (*Id.*, ¶ 37). The Complaint further alleges that, after another hour of being in severe pain and soaked in urine, he was somehow able to call his mother on the telephone to seek help from the prison. (*Id.* at 10-11, ¶ 38).[2]

The plaintiff was returned to his cell at approximately 3:30 p.m. When Nurse Kelly Foster came around for "pill pass," the plaintiff complained to her about swelling and bruising on his wrists. She provided him with Motrin, but the plaintiff alleges that the pain and swelling of his hand continued. (*Id.*, ¶¶ 40-44). At approximately 7:30 p.m., the plaintiff showed his wrist and hand to Correctional Officer Stover, who took pictures, filed a report, and contacted the medical unit to bring the plaintiff an ice pack to relieve his

---

[2] This allegation is incongruent with the plaintiff's allegations that he was still handcuffed behind his back, which the undersigned believes to be a significant fact in determining whether the plaintiff was subjected to cruel and unusual punishment.

pain and swelling. (*Id.*, ¶¶ 46-47). The plaintiff filed a sick call request complaining that his shoulders were popping and grinding, that he was in severe pain, and that he was unable to open his swollen right hand. (*Id.*, ¶ 48). The plaintiff also filed three grievances detailing the alleged incidents giving rise to his alleged injuries. (*Id.*, ¶ 49).[3]

On March 28, 2018, Nurse Foster evaluated the plaintiff's injuries and referred him to see Dr. Lye. She also ordered Motrin for his pain. (*Id.*, ¶¶ 50-51). On March 29, 2018, the plaintiff was seen by Dr. Lye, who ordered an x-ray of his right hand on March 30, 2018. (*Id.*, ¶¶ 52-53). On April 3, 2018, the plaintiff again saw Nurse Foster, who ordered more Motrin for pain, and again referred him to see Dr. Lye. (*Id.*, ¶¶ 56-58). On April 13, 2018, the plaintiff again saw Dr. Lye who ordered x-rays of his shoulders, which were taken on April 17, 2018. (*Id.*, ¶¶ 62, 63). On May 3, 2018, the plaintiff saw Dr. Lye for a follow-up and he was placed on long-term pain medication for the pain in his shoulders. (*Id.*, ¶ 64).

The plaintiff claims that, as a result of his approximately two hours of restraint on March 26, 2018, he has suffered the following injuries and seeks monetary compensation therefore:

- daily pain and lack of natural motion in both shoulders, requiring pain and anti-inflammatory medication. (*Id.*, ¶¶ 65-66).

- his dominant, right hand goes numb after only minutes of use, and his range of motion and grip have suffered. (*Id.*, ¶ 67).

- lack of ability to perform everyday activities using his right hand. (*Id.*, ¶ 68).

- scars on both ankles from the leg restraints. (*Id.*, ¶ 69).

- emotional and psychological injuries. (*Id.*, ¶ 70).

---

[3] His unit manager denied the grievances on April 2, 2018. The plaintiff appealed the grievances to the Warden and Commissioner, who affirmed the denials. (*Id.*, ¶¶ 54-55, 60-61).

On August 22, 2018, the defendants filed the instant Motion to Dismiss (ECF No. 11) and Memorandum of Law in support thereof (ECF No. 12). The motion documents assert that the defendants are immune from suit in their official capacities under the Eleventh Amendment and that the plaintiff's Complaint fails to state any plausible federal constitutional claims against them in their individual capacities.

On August 29, 2018, the plaintiff filed a Response in opposition to the defendants' Motion to Dismiss (ECF No. 18). The plaintiff's Response clarifies that his claims are not based upon his initial placement in the restraints. Rather, his claims are grounded in his placement in a locked cage with exposure to the weather, the tightness of the restraints causing him pain and injury, and the failure of the defendants, including the supervisors, to intervene to remedy these issues during the two-hour period. (*Id.* at 2). The plaintiff's Response further clarifies that he is suing the defendants only in their individual, and not their official, capacities and that he is not alleging any Eighth Amendment claim against these defendants related to his medical treatment.[4] (*Id.*) The defendants filed a Reply on September 6, 2018 (ECF No. 21). This matter is ripe for adjudication.

## ANALYSIS

**A.   The plaintiff's Complaint states a plausible Eighth Amendment claim.**

As noted in the defendants' Memorandum of Law, the Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison]

---

[4] Consequently, the undersigned finds it unnecessary to further address the arguments contained in the defendants' Motion to Dismiss documents related to claims against the defendants in their official capacities and the plaintiff's medical treatment.

5

officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id*. at 833.

In order to establish an Eighth Amendment violation with respect to prison living conditions, an inmate must establish by a preponderance of the evidence that the prison official acted with deliberate indifference (subjective component) to a substantial risk of harm (objective component). It is well-settled that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillan*, 503 U.S. 1, 5 (1992).

Placing an inmate in restraints is considered a use of force. In *Hudson*, the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. 503 U.S. at 8. "The objective component focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force' which must be 'nontrivial.'" *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010)).

Turning to the subjective component, the Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6. The *Whitley* Court noted that:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

475 U.S. at 320. The Supreme Court has further emphasized that, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. at 547). Thus, the Court stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury." *Id.* at 322.

The defendants' Memorandum of Law contends that the conduct of the defendants herein did not rise to the level of cruel and unusual punishment. Rather, they state:

> Here, the Correctional Officers were conducting a search of Plaintiff's pod when inmate Lively became noncompliant with Defendants Buzzard and Ryan Hill. [ECF No. 2] at ¶ 11. Defendant Buzzard sprayed inmate Lively with a chemical agent. *Id.*, at ¶ 12. Since the area was contaminated and in order to expedite the search of the pod, Plaintiff and several other inmates were taken to the one-man recreation cages. *Id.*, at ¶¶ 14-15. These are the same recreation cages that the inmates use on a daily basis for recreation and to make phone calls. Although Plaintiff claims he was placed "outside," the recreation cages are located inside the prison by the glass from four (4) back windows has been removed. *Id.*, at ¶¶ 24-25. Plaintiff was only "outside" for approximately two (2) hours, yet he claims he suffered significant injuries to his shoulders due to the hand restraints. *Id.*, at ¶¶ 79-81.

(ECF No. 12 at 9).

The plaintiff's Response contends that, once he was confined in the one-man cage, "there was no penological reason to leave the restraints on, only punitive." (ECF No. 18 at 4). He notes that the cages are designed with a "beanhole," specifically for the purpose

7

of removing restraints once the inmate is secured in the cage. (*Id.* at 13). He further asserts that his case is "very similar" to that of *Hope v. Pelzer*, 536 U.S. 730 (2002). In *Hope*, the Supreme Court found that attaching a prisoner to a hitching post, once for two hours, and another time for seven hours, outside in the sun, with limited to no access to drinking water and no bathroom breaks, amounted to the "gratuitous infliction of wanton and unnecessary pain" that was clearly prohibited by the Eighth Amendment. The Court found that Hope was "placed in a position that was painful, and under circumstances that were both degrading and dangerous." 536 U.S. at 745.

The plaintiff further disputes the defendants' contentions that he did not make them aware of an excessive risk of harm to his health and safety. The plaintiff contends that the allegations in his Complaint and affidavits attached thereto demonstrate that the plaintiff repeatedly made the defendants aware of his complaints of discomfort and pain. He further disputes the defendants' contention that he was not technically outside, as the open windows still exposed him to the cold temperature. His Response states, "Plaintiff was in a cage with one entire wall facing the elements through a mesh window and plaintiff will attest that if it's 40 [degrees] outside, it's the same temperature in the cage he was in." (ECF No. 18 at 6).

The plaintiff's Response further asserts that there is also a basis to hold liable the defendants who were not directly involved in placing him in the cage because they failed to intervene when he asked them to remove the restraints and when he asked to use the restroom. He further asserts that the supervisory defendants (who are believed to be Frame and Toney) should be held liable for the conduct of their subordinates. (*Id.* at 7-8). He acknowledges that such liability is "not premised upon *respondeat superior*, . . . but on a recognition that supervisory indifference or tacit authorization of subordinates'

8

misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." (*Id.* at 8) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)).

The defendants' Reply brief contends that the plaintiff's placement in restraints on the recreation yard for approximately two hours is distinguishable from the facts in *Hope*, was not a punishment, and was a "far cry" from an Eighth Amendment violation. (ECF No. 21 at 4-5). Specifically, the Reply states:

> In *Hope*, the inmate was handcuffed to a hitching post on two occasions. *Hope*, at 734-735. On the first occasion, Hope got into an argument with another inmate and was handcuffed to the hitching post for two hours. *Id.*, at 734. Hope was only slightly taller than the hitching post, so his hands were above shoulder height and his shoulders grew tired from being handcuffed so high. *Id.* Whenever he tried to move his arms to improve circulation, the handcuffs cut into his wrists, causing pain and discomfort. *Id.*
>
> On the second occasion, Hope was punished more severely. He took a nap during a bus ride to the chain gang's worksite and an altercation ensued with a guard after Hope was slow to respond to an order to get off the bus. *Id.* Hope was handcuffed, placed in leg irons, and transported back to the prison where he was placed on a hitching post, shirtless, for seven hours. *Id.*, at 734-735. During the seven hour period he was given water once or twice and was given no bathroom breaks. *Id.*, at 735. At one point, a guard taunted Hope about his thirst. *Id.* The Court held that Defendants' claim of qualified immunity was precluded at the summary judgment phase and stated that Hope's claims, if true, constituted cruel and unusual punishment under the Eighth Amendment. *Id.*, at 738.
>
> Here, these Defendants were not attempting to punish Plaintiff as the defendants attempted to punish the inmate in *Hope*. Plaintiff was taken to the recreation yard while the segregation unit was searched. The Fourth Circuit of Appeals has noted that "generally a prisoner should be permitted some regular out-of-cell exercise." *Mitchell v. Rice*, 954 F.2d 187, 191 [4th Cir.] 1992) (footnote omitted). Restricting the opportunities for physical exercise, under certain circumstances, may reach the level of cruel and unusual punishment. *Id.*, at 191-92 (citations omitted). Plaintiff was returned to his cell immediately following the search. Plaintiff was not punished or otherwise subjected to cruel and unusual punishment. He was essentially rewarded. He received additional time in the recreation yard. Time which. by his own admission, he passed by calling his mother.

(*Id.* at 4-5).[5]

A number of courts within the Fourth Circuit have held that, generally, the use of ambulatory restraints, even for extended periods of time, without evidence of significant physical injury, does not satisfy the objective component of the Eighth Amendment standard. *See Holley v. Johnson*, No. 7:08CV00629, 2010 WL 2640328, *14 n.22 (W.D. Va. June 30, 2010). Thus, "ambulatory restraints, as a control mechanism, properly applied and maintained for even a lengthy period, are 'not a use of force that offends contemporary standards of decency so as to satisfy the objective component of an excessive force claim.'" *Id.* at *14.

However, the improper use of such restraints, coupled with other conditions, such as denial of access to bathroom facilities, exposure to extreme temperatures or weather elements, and taunting inmates concerning those conditions, could be considered "repugnant to the conscience of mankind" or conduct that "offends contemporary standards of decency." *See, e.g., Goodman v. McCoy*, No. 7:12CV00186, 2013 WL 693103, *8-*9 (W.D. Va. Feb. 26, 2013) (inmate placed in ambulatory restraints and security smock for 27 hours without bathroom breaks causing him to defecate and urinate on himself could state an Eighth Amendment claim). The *Goodman* Court noted that the conditions to which Goodman was exposed were "more akin to *Hope*" than to *Holley* and similar cases addressing only the use of ambulatory restraints for an extended period of time. *Id.* at 9; *see also Blount v. Miller*, No. 7:14CV00007, 2015 WL 1505772, *5 (Mar. 31, 2015) (improperly applied ambulatory restraints, leaving inmate in awkward and

---

[5] The defendants' argument that the plaintiff was "rewarded" with additional recreation time as a result of this incident rings hollow. The plaintiff's placement on the recreation yard under the circumstances presented was certainly not a privilege.

painful positions, posed significant risk of serious harm and refusal of correctional and medical staff to take corrective action was sufficient to constitute deliberate indifference under the Eighth Amendment); *Fulford-El v. Wolfe*, No. WDQ-10-0151, 2010 WL 4721711, *3 (D. Md. Nov. 15, 2010) ("An inmate whose bathroom use requests are ignored and who is forced to sit in his own waste has an Eighth Amendment claim.")

In the instant case, the plaintiff alleges that, once he was placed in the recreation yard cage, the defendants refused to remove or adjust his restraints, notwithstanding having been advised by the plaintiff that the restraints were not double-locked and were really tight. The plaintiff alleges that there was no penological justification for this refusal.

Moreover, the facts alleged in the Complaint demonstrate that the defendant correctional officers taunted the plaintiff and other inmates about their placement in the recreation yard cages and their exposure to the colder temperatures and still refused to intervene to correct the issues concerning the placement of the restraints. Finally, the alleged facts suggest that the plaintiff attempted to advise the correctional officers that he needed to urinate, after being left unsupervised for at least an hour, but was offered no opportunity to use bathroom facilities, when none were immediately available to him, and was then left soaked in his own urine for another hour thereafter. The plaintiff has also alleged lingering physical deficits and emotional injuries stemming from this incident.

Taking all of these allegations as true, as required upon review of a Rule 12(b)(6) motion, the undersigned proposes that the presiding District Judge **FIND** the combination of conditions to which the plaintiff was exposed could satisfy the objective component of the Eighth Amendment standard, and that the allegations concerning the conduct of the correctional officers are sufficient to demonstrate the unnecessary and wanton infliction of pain sufficient to satisfy the subjective component. Accordingly, the

undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Complaint sufficiently states plausible Eighth Amendment claims against the defendants.

Nevertheless, although the defendants' motion documents focused on whether an Eighth Amendment violation had been adequately demonstrated, the undersigned believes that the court must also address whether the right allegedly violated by the defendants was clearly established to determine whether the defendants are entitled to qualified immunity. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Supreme Court has repeatedly emphasized that "'clearly established law' should not be defined 'at a high level of generality'" and that the "law must be particularized to the facts of the case." *White v. Pauly*, 127 S. Ct. 548, 552 (2017) (citations omitted). Thus, "in light of pre-existing law, the unlawfulness must be apparent." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While the Eighth Amendment right to be free from cruel and unusual punishment has certainly been long established at a generalized level, "[t]he Fourth Circuit has explained that a right is clearly established where 'the contours of the right . . . have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional.'" *Goodman*, 2013 WL 693103, at *10 (quoting *Edwards v. City of Goldsboro*, 189 F.3d 231, 251 (4th Cir. 1999)).

As noted by the Court in *Goodman*:

> [V]irtually all of the cases that Defendants could have consulted at the time of this incident have held that the use of ambulatory restraints (as opposed to more restrictive types of restraints), even for lengthy periods did not offend the Eighth Amendment . . . . Indeed, Goodman has not pointed to a case in which the use of ambulatory restraints coupled with preventing of

12

> limited access to a toilet for any period of time was held to violate the Eighth Amendment, where there were no other aggravating factors or injuries. Given this dearth of case law, the Court easily concludes that Defendants' alleged conduct here did not violate a "clearly established right."

2013 WL 693103, at *10-*11. In fact, the undersigned has not located any Supreme Court or Fourth Circuit precedent addressing facts similar to those at bar. Outside of *Hope*, which is distinguishable, the case law located is largely from the district court level. Consequently, there is no bright line established by the case law that would have placed the defendants herein on clear notice that their conduct violated the Eighth Amendment. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the defendants are entitled to qualified immunity on the plaintiff's Eighth Amendment claims against them.

### B. The Complaint fails to state a plausible due process claim.

The plaintiff's Complaint also alleges that his placement in the one-man recreation cage, fully restrained and exposed to cold temperatures for two hours, violated his right to due process of law under the Fourteenth Amendment. The defendants' motion documents assert that the plaintiff's generalized due process claim is superseded by his more specific Eighth Amendment claim. Their Memorandum of Law states:

> "If a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S.386, 394 (1989)). In *Graham*, the Supreme Court held that where an explicit textual source of constitutional protection applies to physically intrusive government conduct, "that Amendment, not the more generalized notion of 'substantive due process,'" must be the guidepost for analyzing the claim. 490 U.S. at 395. Here, Plaintiff's proper claim, if any, is appropriately addressed under the Eighth Amendment's prohibition on cruel and unusual punishment. Thus, according to *Lanier* and *Graham*, Plaintiff's Fourteenth Amendment due process claim lacks merit and should be dismissed.

(ECF No. 12 at 12).

The plaintiff's Response clarifies that he believes that he has stated a plausible separate due process claim grounded in the fact that the circumstances under which he was restrained presented an "atypical and significant hardship in relation to ordinary prison life" that gives rise to a protected liberty interest. Thus, he further contends that he should have been given some sort of hearing before he was subject to such restraint. (ECF No. 18 at 10-12). He cites to various cases addressing due process implications of placing an inmate in four-point (as opposed to ambulatory) restraints for lengthier periods of time than are at issue here. His Response further states:

> Plaintiff was in rear restraints that were on too tight and leg shackles that left scars on plaintiff's ankles. Defendants argue incorrectly that the recreation cages aren't in an outside area. Although there is a roof over the cages, they are open to the elements and the one plaintiff was in was connected directly to the outside allowing the wind to blow on the plaintiff when it was only 40 [degrees] outside and he was in shorts, t-shirt, and sandals for over two (2) hours. About an hour into plaintiff's unconstitutional confinement, he was forced to urinate on himself due to lack of facilities available, leaving him soaked in urine for over an hour at that temperature. To make matters worse, plaintiff's water had been turned off at around 7 a.m. and none was offered at any time. Although the Eighth Amendment violations included the use of physical restraints which led to injury, the events alleged in plaintiff's complaint go beyond the bounds of the Eighth Amendment, therefore are included in plaintiff's Fourteenth Amendment claim.

(*Id.* at 11-12). The defendants' Reply reiterates that the plaintiff's argument appears to be nothing more than a restatement of his Eighth Amendment claim, and that the specific Eighth Amendment analysis should govern herein. (ECF No. 21 at 7-8).

The undersigned agrees with the defendants that the Eighth Amendment's prohibition against cruel and unusual punishment should control the resolution of this matter. Nonetheless, even if the plaintiff could allege a separate due process claim, the undersigned proposes that the presiding District Judge **FIND** that the alleged conditions

to which the plaintiff was exposed for two hours are not such an atypical and significant hardship in relation to ordinary prison life so as to give rise to a liberty interest sufficient to support a substantive or procedural due process right. *See Sandin v. Conner,* 515 U.S. 472, 484 (1995); *Beverati v. Smith*, 120 F.3d 500, 502-04 (4th Cir. 1997); *Holley, supra*, 2010 WL 2640328 at \*16 ("The Fourth Circuit has affirmed at least two judgments in which this court held that relatively lengthy periods in ambulatory restraints and confinement under conditions similar to those alleged by Holley were not so atypical as to create a protected liberty interest." (Citations omitted)). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a plausible Fourteenth Amendment claim.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Dismiss (ECF No. 11) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

January 23, 2019

Dwane L. Tinsley
United States Magistrate Judge